UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MAURICE JOHNSON, individually and on
behalf of other similarly situated persons,

                Plaintiff,                    REPORT AND
                                                               RECOMMENDATION

            -against-                     16 CV 6852 (DLI)(RML)

PARTS AUTHORITY, LLC, PARTS
AUTHORITY, INC., PARTS AUTHORITY
LAUREL AVENUE LLC, PARTS
AUTHORITY PARTNERS FRANKLIN
AVE LLC, PARTS AUTHORITY SOUTHERN
LLC, PARTS AUTHORITY-WAW LLC, PARTS
AUTHORITY DISTRICT OF COLUMBIA
LLC, PARTS AUTHORITY ARIZONA LLC,
PARTS AUTHORITY GEORGIA LLC,
PARTS AUTHORITY METRO LLC,
PA AUSTIN LLC and YARON ROSENTHAL,

                Defendants.
-------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated June 22, 2017, the Honorable Dora L. Irizarry, Chief United States District Judge, referred defendants' motion to stay plaintiff's action and compel individual arbitration to me for a report and recommendation. I heard oral argument on July 26, 2017. (See Transcript of Oral Argument , filed July 31, 2017 ("Tr."), Dkt. No. 35.) For the reasons stated below, I respectfully recommend that defendants' motion be granted.

## BACKGROUND

        Plaintiff Maurice Johnson ("plaintiff") commenced this action on December 12, 2016, asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL"), N.Y. LAB. LAW §§ 190, *et seq.*, 650, *et seq.*, against defendants Parts Authority, LLC; Parts Authority, Inc.; Parts Authority Laurel Avenue LLC;

Parts Authority Partners Franklin Avenue LLC; Parts Authority Southern LLC; Parts Authority-WAW LLC; Parts Authority District of Columbia LLC; Parts Authority Arizona LLC; Parts Authority Georgia LLC; Parts Authority Metro LLC; PA Austin LLC (collectively, "Parts Authority"); and Yaron Rosenthal, an individual who allegedly "exercised operational control over all defendants" and oversaw and/or implemented the wage and hour policies and practices that are the subject of this action. (See generally Complaint, dated Dec. 12, 2016 ("Compl."), Dkt. No. 1). Plaintiff alleges that he was employed by defendants at their store in Hyde Park, New York, and worked at other of defendants' stores in Queens, New York. (Id. ¶ 25.)

Plaintiff asserts that defendants own and operate a chain of automobile parts sales and distribution stores throughout the country, and that each of defendants' stores employs auto parts delivery drivers whom "defendants have misclassified as 'independent contractors.'" (Id. ¶¶ 1-2.) Plaintiff alleges that he was employed by defendants as a delivery driver from September 2015 to October 2016. (Id. ¶ 25.) He claims that each of defendants' stores employs delivery drivers, who "have been economically dependent on defendants," as defendants have compensated the delivery drivers through daily or hourly wages, and that defendants "maintain ability to exercise meaningful control, and do exercise meaningful control, over the delivery drivers." (Id. ¶¶ 28, 30.)

Plaintiff's complaint alleges that defendants violated the FLSA and NYLL by, among other things, failing to pay overtime wages (id. ¶¶ 83-95, 96-110); failing to pay the New York minimum wage (id. ¶¶ 111-125); failing to reasonably reimburse vehicle expenses (id. ¶¶ 126-139, 140-160 ); deducting "administrative fees" (id. ¶¶ 161-174, 175-191); failing to provide wage notices and wage statements (id. ¶¶ 192-204, 205-216); and failing to provide "spread-of-hours" pay (id. ¶¶ 217-230). Counts I, IV, and VI are brought under the FLSA as an opt-in

2

collective action on behalf of all of defendants' delivery drivers who have worked in the United States at any time in the last three years. (Id. ¶¶ 10, 68.) Plaintiff's NYLL claims, counts II, III, V, and VII through X, are brought as a class action under FED. R. CIV. P. 23, on behalf of all of defendants' delivery drivers who have worked for defendants in New York in the last six years. (Id. ¶¶ 10, 73.)

Plaintiff asserts that "defendants comprise a 'single employer' or 'single integrated enterprise,' as they share interrelated operations, centralized control of labor relations, common management, and common ownership or financial control." (Id. ¶ 22.) Plaintiff alternatively asserts that defendants are joint employers with respect to the delivery drivers, as they "share authority to hire and fire delivery drivers, determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll, and insurance decisions, and supervise the employees." (Id. ¶ 23.) Plaintiff further alleges that defendants are collectively joint employers of the delivery drivers under the FLSA's broad definition of "employer," referencing 29 U.S.C. § 203(d) and 29 C.F.R § 791.2(b), because the delivery drivers' work "benefited all defendants and/or directly or indirectly furthered their joint interests, and because defendants are not completely disassociated with respect to the employment of the delivery drivers and may be deemed to share control of the delivery drivers, either directly or indirectly, by reason of the fact that each defendant either controls, is controlled by, or is under common control with the other defendants." (Id. ¶ 24.)

Defendants deny that Parts Authority was plaintiff's employer. (Memorandum of Law in Support of Defs.' Motion to Stay Pl.'s Action and Compel Individual Arbitration, dated Jan. 11, 2017 ("Defs.' Mem."), Dkt. No. 25-1, at 1.) They contend that Parts Authority did

not hire plaintiff as a delivery driver, and did not compensate plaintiff for delivery driving services. (Id.) Rather, defendants assert that plaintiff was retained as an owner-operator by non-party Northeast Logistics, Inc. d/b/a Diligent Delivery Systems ("Diligent"), a third-party logistics company with which Parts Authority contracts to receive parts delivery. (Id.)

Parts Authority and Diligent were parties to a Master Client Services Agreement ("MCSA"). (See Master Client Services Agreement, dated Aug. 30, 2010, annexed as Ex. D to the Declaration of Larry Browne, filed Jan. 11, 2017 ("Browne Decl.").) Under the MCSA, Diligent agreed to "inform Owner Operator [delivery driver] of the opportunity to provide delivery services for Client [Parts Authority.]" (MCSA ¶ 2.) Parts Authority would pay Diligent "for the services it provides and the service provided by the Owner Operator's [sic] based on an agreed flat monthly rate." (Id. ¶ 4.) The MCSA states that "any Owner Operator that agrees to perform services for Client shall be an Owner Operator with respect to both Client and Diligent." (Id. ¶ 9.)[1]

It is undisputed that plaintiff contracted with Diligent to provide delivery driving services as an independent owner-operator. (Id. at 1; see also Tr. at 3 (Plaintiff's counsel stating, "We're not disputing [plaintiff's] signature of the agreement with Diligent.") Defendants allege that all payments plaintiff received were from Diligent, not Parts Authority, and that any deductions of administrative fees were made by Diligent, not Parts Authority. (Defs.' Mem. at 2.) Defendants point to the language of plaintiff's owner-operator agreement with Diligent, which states:

---

[1] Defendants further assert that under paragraph 15 of the MCSA, "Diligent is obligated to defend and indemnify Parts Authority against any claim challenging the status of an Owner Operator as an independent contractor and/or arising out of an alleged employer/employee relationship." (Defs.' Mem. at 3.) The text of paragraph 15 is missing from the redacted MCSA attached to defendants' motion.

> (g) Application To Existing Claims and Controversies: This Arbitration Provision is intended broadly to apply to all controversies hereafter arising out of or related to the parties' relationship or Operator's performance of services for Diligent or its customers, as well as any existing controversy that has arisen from the parties' relationship or Operator's performance of services for DILIGENT or its customers, as is permitted under Section 2 of the Federal Arbitration Act.

(Owner Operator Agreement, dated Aug. 31, 2015 ("Agreement"), annexed as Ex. A to the Browne Decl., at 1.)

Defendants also highlight section 17(a) of plaintiff's owner-operator agreement with Diligent, which states in relevant part:

> Arbitration of Claims: In the event of a dispute between the parties, the parties agree to resolve the dispute as described in this Paragraph (hereafter "the Arbitration provision"). This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1, et. seq., and applies to any dispute brought by either Operator or Diligent arising out of or related to this Agreement or Operator's relationship with Diligent…. [T]his Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Arbitration provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.

(Agreement ¶ 17(a).)

Defendants further note that the Dispute Resolution provision of the owner-operator agreement "provides that plaintiff must pursue his claims in arbitration on an individual basis, and not on a class, collective, or representative basis." (Defs.' Mem. at 4.) Paragraph 17(d), the Class Action Waiver section of the Agreement, states: "There shall be no right or authority for any disputes to be brought, heard or arbitrated as a class, collective or representative action." (Agreement ¶ 17(d).)

Defendants argue that under principles of estoppel, they can compel individual arbitration because (1) "the payments Plaintiff seeks and the relationship among Plaintiff and Parts Authority are inextricably intertwined with the agreement and arbitration commitment Plaintiff entered into with Diligent," and/or (2) "Parts Authority was an intended third-party beneficiary of the arbitration provisions of Plaintiff's Owner-Operator Agreement which was specifically intended to apply to disputes arising out of Plaintiff's performance of services for Diligent's customers."  (Defs.' Mem. at 2.)

### DISCUSSION

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA has been interpreted as a "'federal policy favoring arbitration,' requiring federal courts to 'rigorously enforce agreements to arbitrate.'"  Mumin v. Uber Tech., Inc., __ F. Supp. 3d __, No. 15 CV 7387, 2017 WL 934703, at *7 (E.D.N.Y. Mar. 7, 2017) (quoting Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987)); see also Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (stating that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.") (internal quotation marks omitted).  New York State law also strongly favors arbitration.  See Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc., 608 N.E.2d 755, 755 (N.Y. 1992); 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp., 575 N.E.2d 104, 107 (N.Y. 1991), amended on other grounds, 608 N.E.2d 756 (N.Y. 1993); Weinrott v. Carp, 298 N.E.2d 42, 48-49 (N.Y. 1973).  Even so, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation marks and citation omitted).

In adjudicating a motion to compel arbitration, "a court must begin by answering two questions: '(1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the asserted claims.'" Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009), aff'd, 380 F. App'x 22 (2d Cir. 2010) (quoting Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir. 1999)). "The party seeking arbitration has the burden of establishing an agreement to arbitrate." Resorb Networks, Inc. v. YouNow.com, 30 N.Y.S.3d 506, 510 (N.Y. Sup. Ct. 2016) (citing Seneca Ins. Co. v. Secure-Southwest Brokerage, 741 N.Y.S.2d 690 (1st Dep't 2002); Allstate Ins. Co. v. Roseboro, 667 N.Y.S.2d 914 (2d Dep't 1998)). Fundamentally, "arbitration is simply a matter of contract between the parties." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

For motions to compel arbitration, the court applies a "'standard similar to that applicable for a motion for summary judgment.'" Mumin, 2017 WL 934703, at *7 (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). "Therefore, courts must 'consider all relevant, admissible evidence submitted by the parties.'" Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002)). In considering the evidence, "the court must draw all reasonable inferences in favor of the non-moving party." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). If there is a genuine dispute of material fact regarding the making of an agreement to arbitrate, then a trial is necessary. Bensadoun, 316 F.3d at 175 (citing 9 U.S.C. § 4). If, however, the relevant facts are uncontroverted, the court may rule as a matter of law. See Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 27-28 (2d Cir. 2002); see also Schnabel v. Trilegiant Corp., 697 F.3d 110, 128 (2d Cir. 2012).

7

In the instant case, it is undisputed that Parts Authority was not a signatory to the owner-operator agreement between plaintiff and Diligent. Because that agreement's arbitration clause states that "[i]n the event of a dispute between the parties, the parties agree" to submit to arbitration "any dispute brought by either Operator or Diligent arising out of or related to this Agreement or Operator's relationship with Diligent" (Agreement ¶ 17(a)), plaintiff argues that Parts Authority, as a non-party to the agreement, lacks the ability to enforce it. According to plaintiff, Parts Authority cannot rely on equitable estoppel because it cannot demonstrate a sufficient relationship between itself and Diligent. (Pl.'s Memorandum in Opposition to Defs.' Motion to Stay Pl.'s Action and Compel Individual Arbitration, filed Jan. 25, 2017 ("Pl.'s Mem."), Dkt. No. 28, at 1.) Plaintiff also argues that Parts Authority cannot show that it is an intended third-party beneficiary entitled to compel arbitration "because the arbitration provision at issue is expressly limited to only Mr. Johnson and Diligent." (Id.)

Defendants cite three recent cases in which this court granted motions to compel arbitration under similar circumstances. See Michel v. Parts Auth., Inc., 15 CV 5730, 2016 WL 5372797 (E.D.N.Y. June 17, 2016) (declining to address whether the parties entered into an employment contract or independent contractor agreement, "because, in any event, the parties are compelled to arbitrate their claims" either under the FAA or New York state law); Diaz et al. v. Michigan Logistics, Inc, 167 F. Supp. 3d 375, 382 (E.D.N.Y. 2016) (holding that plaintiffs' claims were subject to mandatory arbitration under New York law and explaining that, even though Parts Authority was not a party to the owner-operator agreement, "the subject matter of the dispute between Plaintiffs and Diligent is factually intertwined with the dispute between Plaintiffs and Parts Authority" and "the class and collective action waivers are enforceable against Plaintiff."); Rodriguez-Depena v. Parts Auth., 15 CV 6463, at *4 (E.D.N.Y. Sept. 26,

8

2016), annexed as Ex. G to the Browne Decl. (stating that it is well settled in the Eastern District of New York that "FLSA claims brought by parties subject to valid arbitration agreements can—and must—be arbitrated.").

Each of these cases involved the identical owner-operator agreement, with the same arbitration clause, as the one at issue here. The only distinguishing element, and the one on which plaintiff relies, is that in the instant case plaintiff has not sued Diligent as a co-defendant or alleged that Parts Authority and Diligent comprise a single employer or single entity or jointly controlled plaintiff's employment. (Pl.'s Mem. at 12.) Since there is no dispute between plaintiff and Diligent that would justify joint arbitration with Parts Authority, and Parts Authority is not Diligent's parent company, corporate successor, guarantor, or corporate affiliate, plaintiff argues that Parts Authority cannot compel him to arbitrate. (Id. at 14.)

Plaintiff's argument has a surface appeal; however, as the court in Diaz explained:

> Under principles of estoppel, "signatories to an arbitration agreement can be compelled to arbitrate their claims with a nonsignatory where a careful review of the relationship among the parties, the contracts they signed . . . and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."

Diaz, 167 F. Supp. 3d at 382 (quoting Denney v. BDO Seidman, L.L.P., 412 F.3d 58, 70 (2d Cir. 2005)). A non-signatory seeking to compel arbitration must also show "'a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" Ragone v. Atl. Video at

9

Manhattan Ctr., 595 F.3d 115, 127 (2d Cir. 2010) (quoting Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008)).[2]

Plaintiff opted not to sue Diligent, or to make any allegations concerning Diligent's role, in a transparent attempt to avoid the arbitration requirement in the owner-operator agreement. But he cannot avoid the uncontroverted facts that (1) he is a party that is bound by the terms of that agreement and who clearly and unambiguously agreed to arbitrate, and (2) the instant case constitutes a controversy "arising out of or related to [plaintiff's] performance of services for Diligent *or its customers*." (Agreement ¶ 17(g) (emphasis added). There is no question that Parts Authority contracts with Diligent for logistics services, and that plaintiff contracted with Diligent to provide delivery services to its customers, including Parts Authority. In other words, the subject matter of this dispute (*i.e.*, whether plaintiff was Parts Authority's employee and, if so, whether he was paid appropriately) is factually intertwined with plaintiff's arrangement with Diligent. They cannot be considered separately, regardless of how cleverly plaintiff crafts his complaint. See In re A2p SMS Antitrust Litig., 972 F. Supp. 2d 465,

---

[2] As plaintiff accurately notes, this does not mean "that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate." Rather, "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Sokol Holdings, 542 F.3d at 359. Here, although the MCSA states that Diligent and Parts Authority "are, and intend to remain, independent Owner Operators (Contractors) from each other" (MCSA ¶ 9), the relationship that matters is the relationship between plaintiff and Parts Authority, which would not exist were it not for the owner-operator agreement. See Komatsu v. NTT Data, Inc., No. 15 CV 7007, 2016 WL 2889064, at *4 (S.D.N.Y. May 17, 2016) ("Credit Suisse was not a signatory to the Agreement, and its arbitration clause does not cover disputes with Credit Suisse. However, Plaintiff's services were provided to Credit Suisse pursuant to the Agreement, and Plaintiff cannot avoid the arbitration provision by pressing his claims against Credit Suisse rather than NTT Data, the counterparty to the Agreement.")

484 (S.D.N.Y. 2013) ("allowing parties to plead around or escape equitable estoppel based solely on the matters alleged in a complaint, regardless of their bearing on the precise issues in litigation, would run contrary to the long-standing proposition that 'courts of equity do not make the quality of suitors the test.'").

I therefore conclude that defendants may enforce the arbitration clause, which clearly covers plaintiff's wage and hour claims, and I respectfully recommend that their motion be granted[3] and that the case be stayed.[4]

## CONCLUSION

For the reasons stated above, I respectfully recommend that defendants' motion to stay plaintiff's action and compel individual arbitration be granted. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Irizarry and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
August 17, 2017

---

[3] Plaintiff also argues that the arbitration provision, which prohibits arbitration of class and collective action claims, cannot be enforced because it is unconscionable and violates the National Labor Relations Act and the Norris-La Guardia Act. (Pl.'s Mem. at 18.) That argument has been roundly rejected by courts in this circuit and elsewhere. See Kai Peng v. Uber Techs., Inc., No. 16 CV 545, 2017 WL 722007, at *17 (E.D.N.Y. Feb. 23, 2017) (citing cases). Plaintiff is therefore obligated to arbitrate his claims on an individual basis.

[4] In Katz v. Cellco Partnership, the Second Circuit held that, upon application by any party, proceedings must be stayed where, as here, all claims are referred to arbitration. 794 F.3d 341, 345 (2d Cir. 2015), cert. denied, 136 S. Ct. 596 (2015).