UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAURICE JOHNSON, individually and on behalf of other similarly situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>PARTS AUTHORITY, LLC, *et al.*,<br><br>Defendants. | Case No.: 1:16-cv-6852-DLI-RML<br><br>ECF CASE |

PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S
REPORT AND RECOMMENDTION DATED AUGUST 17, 2017[1]

I.     INTRODUCTION

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72, Plaintiff Maurice Johnson respectfully objects to Magistrate Judge Robert Levy's Report and Recommendation issued August 17, 2017 (the "R&R").  It is undisputed that Defendants (collectively, "Parts Authority") are non-signatories to an agreement between Mr. Johnson and Northeast Logistics, Inc. d/b/a "Diligent Delivery Systems" ("Diligent") which contains an arbitration provision.  Thus, to compel arbitration between Mr. Johnson and Parts Authority based on equitable estoppel, Parts Authority had the burden to prove that "***the non-signatory*** **[Parts Authority]** ***was a co-employer of the plaintiff signatory*** **[Mr. Johnson]*****, who knew about the co-employment relationship*** **[between Parts Authority and Diligent]** ***at the time*** **[Mr. Johnson]** ***signed the arbitration agreement***."  *Medidata Solutions, Inc. v. Veeva Systems Inc.*, No. 17-589, 2017 WL 3503375, at *3 (S.D.N.Y.

---

[1] Plaintiff expressly incorporates by reference all statements of fact and legal arguments set forth in his Memorandum in Opposition to Defendants' Motion to Stay Plaintiff's Action and Compel Individual Arbitration (Doc. 28) ("Opposition") and his response to Defendants' notice of supplemental authority (Doc. 34) ("Response").

1

Aug. 16, 2017). But, Judge Levy did not make any such required finding. Nor could he, as there is no record evidence to support such a finding.

Instead, he first erred by applying the wrong legal standard: he expressly considered the relationship between Mr. Johnson and Parts Authority, not the relationship between Parts Authority and Diligent or the relationship between Plaintiff and Diligent. To fall within the circumstances found sufficient by the Second Circuit to compel arbitration between Mr. Johnson and Parts Authority, Parts Authority and Diligent must be co-employers with respect to Mr. Johnson. There is absolutely no record evidence that Parts Authority and Diligent were Mr. Johnson's co-employers.

In addition, Judge Levy also erred by failing to consider whether, or require Parts Authority to prove that, Mr. Johnson *knew* of a co-employer relationship between Parts Authority and Diligent at the time he signed the agreement with Diligent. Rather, the only applicable record evidence shows that Mr. Johnson would have been completely unaware of a co-employer relationship between Parts Authority and Diligent at that time because Diligent expressly informed Mr. Johnson in writing that it was not, and would not become, his employer. Thus, Parts Authority cannot compel Mr. Johnson to arbitrate.

## II. ARGUMENT

### A. Standard of Review

"When 'a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review.'" *Palmer v. Fannie Mae*, No. 14-4083, 2016 WL 5338542, at *2 (E.D.N.Y. Aug. 18, 2016) (quoting *Jeffries v. Verizon*, 2012 WL 4344188, at *1 (E.D.N.Y. 2012)); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection

2

is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

Questions of arbitrability are decided under "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). This standard is appropriate "regardless of how the party that favors arbitration styles its motion." *Carvant Financial LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 394 (E.D.N.Y. 2013) (internal quotation omitted).

As the Tenth Circuit recently explained, "the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact." *Bellman v. i3Carbon, LLC*, No. 12-1275, 2014 WL 2210739, at *4 (10th Cir. May 29, 2014) (citations omitted); *see, e.g.*, *Russell v. Mimeo, Inc.*, No. 08-5354, 2008 WL 6559743, at *1 (S.D.N.Y. Oct. 29, 2008). "In ascertaining whether questions of material fact remain, we give the nonmoving party 'the benefit of all reasonable doubts and inferences that may arise.'" *Bellman*, 2014 WL 2210739, at *4 (citations omitted).

### B. The R&R Applies the Wrong Legal Standard by Failing to Consider Existence of a Co-Employer Relationship.

The Supreme Court and the Second Circuit have made clear that courts cannot compel any party to arbitrate a dispute that he has not agreed to arbitrate. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003). As Judge Levy correctly found, Parts Authority is not a signatory to the agreement between Mr. Johnson and Diligent. Thus, to compel arbitration, the Court must find that the circumstances fall

3

within a narrow exception to that general rule.

In *Sokol Hldgs., Inc. v. BMB Munai, Inc.*, the Second Circuit set forth two criteria which must be fulfilled to compel arbitration with a non-signatory based on equitable estoppel. Those two criteria are (1) a dispute intertwined with the subject matter of a contract and (2) a sufficient relationship between a signatory and a non-signatory:

> Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of "the relationship among the parties, the contracts they signed . . . , and the issues that had arisen" among them discloses that "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Choctaw Generation Ltd. P'ship. v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001) (internal quotation marks and citation omitted). ***Additionally, "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement***."

542 F.3d 354, 359 (2d Cir. 2008) (emphasis added). The Second Circuit warns that not just any "relationship" between a signatory and a non-signatory will satisfy the second requirement for the test. *Id.* (holding that arbitration with a non-signatory may not be compelled simply because "a relationship . . . may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them"); *Winter Investors, LLC v Panzer*, No. 14-6852, 2015 WL 5052563, at *10 (S.D.N.Y. Aug. 27, 2015) (same).

The Second Circuit further explained the type of relationship necessary to require arbitration with a non-signatory in *Ross v. Am. Exp. Co.*, 547 F.3d 137 (2d Cir. 2008), holding that there must exist the "further necessary circumstance of some relationship between [the non-signatory] and the plaintiffs sufficient to demonstrate that the plaintiffs *intended* to arbitrate this dispute." *Id.* at 148 (emphasis added).

The Second Circuit has found relationships between a signatory and non-signatory sufficient to compel arbitration based on equitable estoppel in only a very limited number of

4

circumstances. *See Medidata Sols.*, 2017 WL 3503375, at *3 (listing the only four circumstances found sufficient by the Second Circuit to justify compelling arbitration based on equitable estoppel). The only one of those circumstances potentially applicable to this matter requires a finding that "***the non-signatory was a co-employer of the plaintiff signatory, who knew about the co-employment relationship at the time she signed the arbitration agreement[.]***" *Id*. (citing *Ragone v. Atl Video*, 595 F.3d 115, 118 & 127 (2d Cir. 2010)) (emphasis added).

Judge Levy first erred by completely failing to consider the existence of a co-employer relationship between Parts Authority and Diligent. Rather, in a footnote, Judge Levy merely found that "the relationship that matters is the relationship between plaintiff and Parts Authority, which would not exist were it not for the owner-operator agreement." Doc. 36, at 10 n.2. Thus, Judge Levy failed to consider the proper relationship. To have a co-employer relationship subject to wage and hour laws, each of the two entities must be an "employer" in relation to an employee. *See, e.g.*, *Sampson v. MediSys Health Network, Inc.*, No. 10-1342, 2012 WL 3027838, at *3-6 (E.D.N.Y. Jul. 24, 2012) (explaining need to determine whether an entity was an "employer" based on a "joint employer" liability theory and the "control factors" considered in that determination). The R&R reflects no consideration of whether Diligent was Mr. Johnson's employer, and it contains no finding that Diligent was Mr. Johnson's employer. Notably, Parts Authority has not even contended that it and Diligent were Mr. Johnson's co-employers.[2]

---

[2] To avoid liability as an "employer" subject to the Fair Labor Standards Act ("FLSA") and state wage and hour laws, Parts Authority does not contend that it and/or Diligent were Plaintiff's employer or co-employers. However, in reality, Parts Authority heavily relied in both its opening and reply briefs on estoppel based on a co-employer relationship known to the plaintiff, primarily by arguing the applicability of *Ragone*, the Second Circuit decision which first recognized and applied the "known co-employer" theory of estoppel. *See, e.g.*, Doc. 25-1, at 2 & 10-11; Doc. 30, at 2-4. Thus, Parts Authority in effect relies on a legal theory that requires proof that Parts Authority does not even attempt to provide.

The consideration of whether Parts Authority derived a benefit from the agreement between Mr. Johnson and Diligent may be relevant to the issue of whether Parts Authority can compel arbitration as an intended third-party beneficiary of that agreement (*see, e.g.*, *Gerszberg v. Li & Fund (Trading) Ltd.*, 215 F. Supp. 3d 282, 291 (S.D.N.Y. Jun. 10, 2016) (listing one of the factors relevant to determining an intended third-party beneficiary as "the contract was intended for [the third-party's] benefit")), but any such benefit to Parts Authority is wholly irrelevant to whether a sufficient relationship exists to justify compelling arbitration based on equitable estoppel. *See, e.g.*, *Medidata Sols.*, 2017 WL 3503375, at *3 (relevant consideration is a co-employer relationship known to the plaintiff *ab initio*, not a benefit to a third-party derived from a contact). Thus, Judge Levy erred by applying the wrong legal standard. When the correct standard is applied, Defendant's motion must fail.

C.  **The R&R Applies the Wrong Legal Standard by Failing to Consider Whether, Much Less Find that, Mr. Johnson Knew About a Co-Employer Relationship Between Parts Authority and Diligent when He Signed the Agreement with Diligent.**

In addition, Judge Levy also erred by failing to consider whether or not Mr. Johnson *knew* about a co-employer relationship between Parts Authority and Diligent when he signed the agreement with Diligent. A finding that a plaintiff asserting an employment claim *knew* of a co-employer relationship between two entities at the time of contracting is essential to finding a relationship sufficient to warrant compelling arbitration based on equitable estoppel. *Ragone*, 595 F.3d at 118 & 127; *Medidata Sols.*, 2017 WL 3503375, at *3.

Moreover, there is absolutely no evidence before the Court indicating that Mr. Johnson *knew* that Diligent and Parts Authority shared a co-employment relationship at the time he signed the agreement with Diligent. That was Parts Authority's burden to prove. *See, e.g.*, *Bakon v. Rushmore Service Center, LLC*, No. 16-6137, 2017 WL 2414639, at *2 (E.D.N.Y. Jun. 2, 2017)

6

("'The party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate.'" (quoting *Tellium, Inc. v. Corning Inc.*, 2004 WL 307238, at *5 (S.D.N.Y. 2004)))). But Parts Authority offered no such evidence.

The only applicable record evidence shows that Mr. Johnson would not know of a co-employer relationship between Parts Authority and Diligent because his agreement with Diligent begins by expressly informing him that he is not, and he would never become, Diligent's "employee." Doc. 26, ECF p.2, Owner Operator Agreement at 1, ¶ 1.[3] Additionally, Parts Authority produced a short declaration from Diligent's CEO, Larry Browne, which noticeably fails to contend in any way that Mr. Johnson was Diligent's employee, that there was a co-employment relationship between Diligent and Parts Authority, that Diligent hired Mr. Johnson, that Diligent supervised Mr. Johnson's work, or that Diligent controlled Mr. Johnson's work in any way. *See* Doc. 25-3. Rather, Mr. Browne's declaration carefully avoids any evidence that Mr. Johnson was employed by Diligent, stating, for example, that "Plaintiff Maurice Johnson contracted with Diligent as an Owner-Operator," rather than stating that Diligent "hired" Mr. Johnson. *Id.*, at 2, ¶ 5. The declaration also states that the agreement between Mr. Johnson and Diligent "memorializes . . . how and how much the Owner-Operator will be paid for full performance of the contracted services," rather than stating that Diligent determined or controlled the method and amount of Mr. Johnson's compensation in any way. *Id.*, at 2, ¶ 4. Mr. Browne's declaration does provide evidence of an "independent contractor" relationship between Mr. Johnson and Diligent including, but not limited to, identifying the agreement which states that Mr. Johnson was not, and

---

[3] Moreover, the "Master Client Services Agreement" ("MCSA") between Diligent and Parts Authority expressly provides that Parts Authority and Diligent "are, and intend to remain, independent Owner Operators (Contractors) from each other . . . ." Doc. 26, ECF p.28, MCSA at 3, ¶ 9 (parentheses in original).

7

would never become, Diligent's employee. *Id.*, at 2, ¶ 5 (identifying Doc. 26, ECF pp.2-16, Owner Operator Agreement). Mr. Brown also testifies that "[c]onsistent with the parties' contractual relationship, Diligent issued Mr. Johnson an IRS Form 1099 in connection with the payment he received for performance of the contracted services." *Id.*, at 3, ¶ 8. An IRS Form 1099 is used to report payments to independent contractors, not wages paid to employees.[4] There is no record evidence showing in any way that Mr. Johnson was Diligent's employee or that Diligent was a co-employer of Mr. Johnson.

Parts Authority relies heavily on *Ragone*, but that case is easily distinguished. Ms. Ragone was hired by AVI to work as a make-up artist for ESPN. She admitted in her complaint that she knew from the beginning the essential facts showing a co-employer relationship between AVI and ESPN with respect to her employment. Specifically, Ms. Ragone admitted in her complaint that she was "employed by AVI as a make-up artist" (*Ragone*, 595 F.3d at 118 & n.1), she reported to AVI management (*id.*, at 119; *see also, e.g.*, *id.*, at 118 n.2 (referencing Ms. Ragone's "direct supervisor at AVI")), and she was required to follow instructions of ESPN talent and "supervisors" (*id.*). Moreover, Ms. Ragone "admit[ted] that she *knew from the date of her employment by AVI* that she would work with and be supervised by ESPN personnel in the ordinary course of her daily duties." *Id.*, at 128 (emphasis added). The Second Circuit concluded that Ms. Ragone's "*knowledge*" from the beginning of her employment regarding the control and supervision by both AVI and ESPN "allows [ESPN] to avail itself of the arbitration agreement between Ragone and AVI." *Id.* (emphasis added).[5]

---

[4] *See* https://www.irs.gov/faqs/small-business-self-employed-other-business/form-1099-misc-independent-contractors/form-1099-misc-independent-contractors (accessed August 30, 2017).

[5] In a footnote, the R&R cites *Komatsu v. NTT Data, Inc.*, No. 15-7007, 2016 WL 2889064 (S.D.N.Y. May 17, 2016), which was litigated by a *pro se* plaintiff. In *Komatsu*, Judge Schofield

In sharp contrast to *Ragone*, the record here is completely devoid of any evidence showing that Mr. Johnson knew that Diligent would be his employer or that he would be co-employed by Parts Authority and Diligent. Again, all of the applicable record evidence at this stage shows that he was not Diligent's employee, and that he would not have known from the beginning that he was Diligent's employee. Rather, Diligent's written agreement began by expressly disclaiming that it employed Mr. Johnson, or would ever employ him.

**D.**  **Judge Levy Did Not Compel Arbitration Based on the Intended Third-Party Beneficiary Rule, Nor Could Mr. Johnson Be Compelled Arbitration on that Basis.**

The R&R does not substantively address, or reach any conclusion, regarding Parts Authority's effort to enforce arbitration as an intended third-party beneficiary of the contract between Mr. Johnson and Parts Authority. For the reasons previously stated by Mr. Johnson, Parts Authority cannot compel arbitration as an intended third-party beneficiary. *See* Doc. 28.

### III.     CONCLUSION

For the reasons set forth above and in Plaintiff's Opposition and Response, Plaintiff respectfully submits that the Court should sustain his objections to the R&R and deny Parts Authority's motion to compel arbitration.

---

compelled arbitration based on the "intertwined" nature of the claims and an arbitration agreement, but did not address the second requirement for equitable estoppel: the showing of a sufficient relationship between a signatory and non-signatory. *Id.*, at *4. Very recently however, in *Medidata Solutions, Inc. v. Veeva Systems Inc.*, Judge Shofield observed the narrow and limited circumstances in which the Second Circuit permits courts to compel arbitration based on equitable estoppel, including circumstances where "the non-signatory was a co-employer of the plaintiff signatory, who *knew* about the co-employment relationship at the time she signed the arbitration agreement[.]" 2017 WL 3503375, at *3 (emphasis added). This new opinion in *Medidata* expressly follows the Second Circuit's decision in *Ragone*. *Id.* Moreover, Judge Shofield's opinion in *Medidata* shows that a more fulsome opinion in *Komatsu* would have had to consider the sufficiency of the relationship between the signatory and the non-signatory and whether the plaintiff in *Komatsu* knew of a co-employer relationship at the time he signed an arbitration agreement. Thus, the R&R should not have relied on *Komatsu*.

9

Dated: St. Louis, Missouri
August 31, 2017

Respectfully submitted,

**WEINHAUS & POTASHNICK**

By: */s/ Mark Potashnick*
Mark Potashnick, MO Bar # 41315
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 984-810
markp@wp-attorneys.com

**LIBERMAN, GOLDSTEIN & KARSH**
Eli Karsh, MO Bar # 43061
(admitted *pro hac vice*)
230 South Bemiston Ave., Suite 1200
Clayton, Missouri 63105
Telephone: (314) 862-3333 ext. 13
Facsimile: (314) 863-0605
elikarsh@aol.com

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
Jeremiah Frei-Pearson (NY Bar #4232922)
John D. Sardesai-Grant (NY Bar #4746566)
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com
jsardesaigrant@fbfglaw.com

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

<u>/s/ John D. Sardesai-Grant</u>