UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAURICE JOHNSON, *individually and on behalf of other similarly situated persons*,<br><br>                Plaintiff,<br><br>                -against-<br><br>PARTS AUTHORITY, LLC, et al.,<br><br>                Defendants. | Case 16-cv-06852 (DLI)(RML) |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE LEVY'S REPORT AND RECOMMENDATION

                ABRAMS, FENSTERMAN,
                FENSTERMAN, EISMAN, FORMATO,
                FERRARA, WOLF & CARONE, LLP
                160 Linden Oaks, Suite E
                Rochester, New York 14625
                Tel: 585.218.9999
                *Attorneys for Defendants*

*Of Counsel:*
  Sharon Stiller

I.  **PRELIMINARY STATEMENT**

Plaintiff Maurice Johnson, an independent owner-operator delivery driver, brings this action against Parts Authority,[1] for alleged violations of federal and state wage laws. Plaintiff alleges that because he made deliveries for Parts Authority, Parts Authority became his statutory employer. But Parts Authority did not hire Plaintiff to work as a delivery driver nor did it ever compensate him in any way for such services. Rather, Plaintiff entered into an Owner-Operator Agreement ("OOA") with Northeast Logistics, Inc., d/b/a Diligent Delivery Systems ("Diligent") to receive opportunities to provide delivery services to Diligent's customers. Parts Authority contracts with Diligent to receive logistics services, including parts delivery. Plaintiff's OOA – under which Plaintiff received the opportunity to provide services to Parts Authority -- contains a broad arbitration clause "intended broadly to apply to all controversies arising out of or related to the parties' relationship or Operator's performance of services for Diligent or its customers." OOA at &17 (g). Parts Authority and Diligent have been named as co-defendants in other recent cases filed in this judicial district by other Owner-Operators making the same misclassification claims asserted by Plaintiff here. In each case, Parts Authority and Diligent have interposed, and the court has granted, a motion to compel arbitration. Plaintiff is aware of those results as he alleges in his complaint that Defendants have been repeatedly sued in this District for the same, or very similar, violations. But unlike the Owner-Operators bringing those suits, Plaintiff sanitizes his complaint of any reference to Diligent or his Owner-Operator Agreement, and falsely alleges instead that "Defendants paid Plaintiff $88.00 per shift," and "Defendants deducted administrative fees" even though all payments he received were from Diligent not Parts Authority and any deductions made were by Diligent not Parts Authority.

---

[1] For purposes of this response, "Parts Authority" refers collectively to the named defendants in this action, including Parts Authority, Inc., Parts Authority, LLC, and Yaron Rosenthal.

1

On August 17, 2017, Magistrate Judge Levy recommended that the Court grant Parts Authority's motion to compel individual arbitration. (Dkt. #36.) Magistrate Judge Levy found that despite Plaintiff's attempt to circumvent arbitration through artful pleading, Plaintiff's claims against Parts Authority were factually intertwined with his OOA and could not be considered separately:

> Plaintiff opted not to sue Diligent, or to make any allegations concerning Diligent's role, in a transparent attempt to avoid the arbitration requirement in the owner-operator agreement. But he cannot avoid the uncontroverted facts that (1) he is a party that is bound by the terms of that agreement and who clearly and unambiguously agreed to arbitrate, and (2) the instant case constitutes a controversy "arising out of or related to [plaintiff's] performance of services for Diligent *or its customers*." ... There is no question that Parts Authority contracts with Diligent for logistics services, and that plaintiff contracted with Diligent to provide delivery services to its customers, including Parts Authority. In other words, the subject matter of this dispute (*i.e.*, whether plaintiff was Parts Authority's employee and, if so, whether he was paid appropriately) is factually intertwined with plaintiff's arrangement with Diligent. They cannot be considered separately, regardless of how cleverly plaintiff crafts his complaint.

Plaintiff's objections to Magistrate Judge Levy's Report and Recommendation ("R&R") to stay the court proceedings and compel arbitration rest on an unreasonably narrow and rigid view of the equitable estoppel doctrine, rejected by Magistrate Judge Levy. Plaintiff contends that application of the doctrine in this case is necessarily contingent upon Plaintiff's employment status. Specifically, Plaintiff asserts that Magistrate Judge Levy erred because the "R&R reflects no consideration of whether Diligent was Mr. Johnson's employer, and ... Parts Authority has not even contended that it and Diligent were Mr. Johnson's co-employers." (Obj., p. 5.)

This argument distorts the governing legal standard. When determining whether to apply the equitable estoppel doctrine, courts must undertake a fact-specific inquiry, taking into account the relationship among the parties, the contracts they signed, and the nature of their underlying dispute. When such an inquiry is made in this case, there can be no doubt that Plaintiff's dispute with Parts Authority is intertwined with the OOA he entered into with Northeast Logistics, Inc.,

2

d/b/a Diligent Delivery Systems and that a sufficiently close relationship among the parties exists. Accordingly, Parts Authority respectfully requests that the Court adopt Magistrate Judge Levy's R&R in full, and compel Plaintiff to submit his claims to individual arbitration.

## II. STANDARD OF REVIEW

When specific objections are made to a report and recommendation, the "district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997). The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). When a party makes conclusory or general objections, or simply reiterates his original arguments, the Court reviews the report and recommendation only for clear error. *Alaimo v. Bd. of Educ. of the Tri–Valley Cent. Sch. Dist.,* 650 F.Supp.2d 289, 291 (S.D.N.Y. 2009) ("[W]hen a party makes conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."). Regardless of the standard applied here, the Court should adopt the report and recommendation in full.

## III. THE COURT SHOULD ACCEPT THE MAGISTRATE'S REPORT AND RECOMMENDATION

The thrust of Plaintiff's objections to the report and recommendation is that Magistrate Judge Levy erred in ordering arbitration absent proof that Parts Authority and Diligent were Plaintiff's "co-employers." (Obj., pp. 5-8.) In fact, Plaintiff goes so far as to suggest that because Diligent characterizes its relationship with Plaintiff as a principal-independent contractor relationship (rather than an employment relationship), the equitable estoppel doctrine is inapplicable as a matter of law. (Obj., p. 7-9.) Plaintiff's tortured interpretation of the equitable estoppel doctrine should be rejected.

3

### A. The Equitable Estoppel Doctrine Is Not Limited To "Co-Employer" Relationships

Despite Plaintiff's representations to the contrary, the Second Circuit has not cabined the specific types of relationships that warrant application of the equitable estoppel doctrine. On the contrary, the inquiry is "*fact-specific*" and depends upon the degree of "intertwined-ness" between the issues the nonsignatory is seeking to resolve in arbitration, and the agreement the estopped party has signed, in each case. *See JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 177-78 (2d Cir. 2004) (emphasis supplied).

Specifically, "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of 'the relationship among the parties, the contracts they signed ..., and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001) (internal quotation marks and citation omitted). In addition to factual intertwinement, "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with [the signatory party] must be estopped from denying an obligation to arbitrate a similar dispute with the" nonsignatory party as well. *Id.* (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008).

While the court in *Medidata Solutions, Inc. v. Veeva Systems Inc.*, No. 17-589, 2017 WL 3503375, at *3 (S.D.N.Y. Aug. 16, 2017) set forth *examples* of circumstances under which the doctrine has been applied, the list is not exhaustive, and the doctrine does not depend upon the labels the parties ascribe to their relationship. As the court recognized, "[i]n each [of those] case[s], the estoppel 'flowed...from the conclusion that the relationships among the parties

4

developed in a manner that made it unfair for [the party resisting arbitration] to claim that its agreement to arbitrate ran only to [its counterparties under the agreement] and not to [a related non-signatory].'" *Id.* (quoting *Sokol*, 542 F.3d at 361).

The same can be said here. Plaintiff does not dispute that he contracted with Diligent to receive engagements to perform services for Diligent's clients, such as Parts Authority. Nor does he dispute that but for his contractual relationship with Diligent, he would not have been able to perform services for Parts Authority. Moreover, the record establishes that at the time Plaintiff signed the OOA, he knew he would perform services directly for, and interact with, Diligent's clients, including Parts Authority.[2] (Browne Decl., Ex. A, ¶ 3 ["During the term of this Agreement, DILIGENT may, from time to time, inform Operator of a client-engagement opportunity … DILIGENT will not dictate the time of performance or the time or hours during which an opportunity is to be performed. All such determinations shall be arrived at between Operator and the customer."].) Lastly, notwithstanding the allegations of the complaint that "Defendants paid Plaintiff" or "Defendants failed and refused to pay the Delivery Drivers," the record demonstrates that Diligent issued Plaintiff's payments, and did so pursuant to Plaintiff's OOA. (See IRS Form 1099, Browne Decl., Ex. I.)

Accordingly, regardless of Plaintiff's employment status, his claims against Parts Authority are inextricably intertwined with his OOA, and a sufficiently close relationship among the parties exists such that Plaintiff should be estopped from refusing to arbitrate his dispute with

---

[2] Plaintiff does ***not*** dispute that at the time he entered into the OOA, he knew he would interact with, and perform services directly for, Diligent's clients, including Parts Authority. He only asserts that he could not have known about a "***co-employer relationship*** between Parts Authority and Diligent because his agreement with Diligent begins by expressly informing him that he is not, and he would never become, Diligent's 'employee.'" (Obj., p. 7) (emphasis supplied.)

5

Parts Authority.³ *See Ragone, supra*, 595 F.3d at 127-28 (the plaintiff's "knowledge that she would extensively treat with [the non-signatory] is sufficient to demonstrate the existence of a relationship between [plaintiff and the non-signatory] that allows the latter to avail itself of the arbitration agreement between [plaintiff and the signatory employer].").⁴

---

³ Plaintiff's reliance upon *Medidata Solutions* is also unavailing because the facts in that case are inapposite. Most critically, unlike in this case, the defendant and plaintiffs were ***competitors***, and did not have ***any*** relationship with one another. *Medidata Solutions*, 2017 WL 3503375 at *2 ("Defendant and Plaintiffs are competitors, and Plaintiffs have never treated Defendant as a party to the Agreements. There was no reason for Plaintiffs to believe that they were 'entering into any kind of relationship' with Defendant by having the Former Employees sign the Agreements.") Moreover, given the allegations in Plaintiff's unfair labor practice charge, wherein Plaintiff characterizes the ADR Provision in his OOA as a ***Parts Authority*** policy (*see* Stiller Decl, ¶ 3, Exh. B), any suggestion that *Medidata Solutions* is more factually analogous to this case than the decisions in *Diaz v. Michigan Logistics, Inc.*, 167 F. Supp. 3d 375, 382 (E.D.N.Y. 2016) (Wexler, J.), *DePena v. Parts Authority, Inc.*, 15-CV-6463 (E.D.N.Y. Sept. 26, 2016) (Vitaliano, J.), (appeal pending), and *Michel v. Parts Authority, Inc.*, 15-CV-5730 (E.D.N.Y. June 17, 2016) (Ross, J.), where this Court compelled the plaintiffs to arbitrate wage and hour claims asserted against Diligent and Parts Authority under the equitable estoppel doctrine, should be rejected.

⁴ Plaintiff also faults Magistrate Judge Levy for analyzing the relationship between Plaintiff and Parts Authority, rather than the relationship between Diligent and Parts Authority, and Diligent and Plaintiff. However, the Second Circuit has repeatedly focused its analysis on the relationship between the non-signatory seeking to enforce the arbitration agreement and the party seeking to avoid arbitration. *See Ragone*, 595 F.3d at 128 ("Moreover, in contrast to *Ross*, there is the presence of the further necessary circumstance of a relationship between Ragone and ESPN that justifies sending this entire dispute to arbitration. Ragone admits that she knew from the date of her employment by AVI that she would work with and be supervised by ESPN personnel in the ordinary course of her daily duties. This knowledge that she would extensively treat with ESPN personnel is sufficient to demonstrate the existence of a relationship between Ragone and ESPN that allows the latter to avail itself of the arbitration agreement between Ragone and AVI."); *Ross v. Am. Express Co.*, 547 F.3d 137, 140 (2d Cir. 2008) ("But the further necessary circumstance of some relation between Amex and the plaintiffs sufficient to demonstrate that the plaintiffs intended to arbitrate this dispute with Amex is utterly lacking here. ... The plaintiffs did not in any way treat with Amex as a party to the cardholder agreements.").

6

### 1. Neither Parts Authority Nor Diligent Need To Concede Joint Employment For The Doctrine To Apply

Plaintiff further contends that Magistrate Judge Levy erred because Parts Authority and Diligent have not conceded the existence of a joint employment relationship. (Obj., pp. 7-9.) It is Plaintiff's allegation that he, and those allegedly similarly situated to him, are employees of Parts Authority. As discussed, many of those "similarly situated" owner-operators have alleged that Parts Authority and Diligent are joint-employers.[5] Both Parts Authority and Diligent have consistently denied employer status, joint or otherwise, because the owner/operators are self-employed as independent contractors. Certainly, defendant cannot be expected to concede a liability determining legal status in order to enforce an agreement to arbitrate.

This Court has repeatedly and consistently ordered similar claims against Parts Authority to arbitration pursuant to the Diligent OOA under the equitable estoppel doctrine. Neither Diligent nor Parts Authority conceded the existence of a joint employment relationship, and this Court never made any determinations with respect to the plaintiffs' employment status. While it is true that the plaintiffs in those cases alleged that both Diligent and Parts Authority were their employers, this "distinction" makes little difference.

In this case, Plaintiff contends Parts Authority should have classified him as an employee, and he cannot plausibly deny that his claims necessarily implicate the OOA, and his arrangement with Diligent. Plaintiff's decision to strategically omit critical facts about his relationship with Diligent from the complaint does not alter the parties' underlying relationship. *See In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 484 (S.D.N.Y. 2013) ("allowing parties to plead around or escape estoppel based solely on matters alleged in a complaint ... would run contrary to the long-

---

[5] . It is the Plaintiff that has alleged that Parts Authority paid Plaintiff, knowing that all payments were made by Diligent such that unless Plaintiff is alleging a relationship between the two, Plaintiff has misrepresented the facts to the Court.

7

standing principals of equity."). Accordingly, just as in *Diaz*, *Michel*, and *DePena*, the Court should order Plaintiff's claims against Parts Authority to individual arbitration, irrespective of Plaintiff's employment status.

## IV. CONCLUSION

This case presents a quintessential example of circumstances warranting application of the equitable estoppel doctrine. Parts Authority therefore respectfully requests that the Court adopt Magistrate Judge Levy's R&R in full, and compel Plaintiff to submit his claims to individual arbitration.

Respectfully submitted,

Dated: September 14, 2017
Rochester, New York

*/s/ Sharon P. Stiller*
Sharon P. Stiller, Esq.
Abrams, Fensterman, Fensterman, Eisman,
Formato, Ferrara, Wolf & Carone, LLC
160 Linden Oaks, Suite E
Rochester, New York 14625
*Attorneys for Defendants*