# Exhibit A

## AMERICAN ARBITRATION ASSOCIATION
### Employment Arbitration Tribunal

In the matter of the arbitration between:

SUSANA LUCIO                                         Claimant

                and

PARTS AUTHORITY, LLC And PARTS
AUTHORITY, INC.

                                          Respondents

AAA Case No.: 01-18-0000-6169

## FINAL AWARD

     I THE UNDERSIGNED ARBITRATOR having been designated in accordance with the Owner Operator Agreement entered into by the above-named parties and dated May 11, 2015 and having been duly sworn and having duly heard the proofs and allegations of the parties, hereby AWARD, as follows:

     An Arbitration hearing was held on January 15 and 16, 2019 before arbitrator, Deborah Masucci. Claimant, Susana Lucio ("herein after called Claimant"), was represented by attorneys Jeremiah Frei-Pearson and Andrew White from Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Mark Potashnick from Weinhaus & Potashnick. Respondents, Parts Authority, LLC And Parts Authority, Inc. ("herein after called Respondents"), were represented by Andrew P. Marks from Dorf & Nelson, LLP and Sharon P. Stiller from Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP.

## PROCEDURAL HISTORY

     An Owner Operator Agreement effective May 11, 2015 was signed by Claimant and Fred Rosenau on behalf of Diligent Delivery Systems ("herein after called Diligent"). Section 15 of the Owner Operator Agreement states that the parties to the Agreement "agree to resolve any disputes between Diligent and the Operator directly or with an agreed form of Alternative Dispute Resolution". (Joint Exhibit 7)

     A Class and Collective action was filed with the Eastern District of New York on December 12, 2016 naming Parts Authority et. al. as defendants (see Joint Exhibit 5). On March 6, 2017, Claimant, through her counsel, filed a Consent to Become a Party Plaintiff in the Class and Collective action noted (see Joint Exhibit 6 and Joint Stipulation of Facts number 10). Even though Diligent was not a party to the Class and Collective action, Respondents moved to compel arbitration under Section 15 of the Diligent Owner Operator agreement because Respondents were customers of Diligent. On August 17, 2017, Magistrate Judge Levy recommended that a motion to compel individual arbitration should be granted. By Order dated September 30, 2017, Judge Irizarry confirmed the recommendation and ordered individual arbitration. On February 8, 2018, Claimant through her counsel, Mark Potashnick, consented to arbitration at the American Arbitration Association ("herein after called AAA") (see e-mail dated

1

2/8/18 from Potashnick to the AAA). The matter proceeded under the AAA Employment Arbitration Rules effective November 1, 2009.

By email dated January 22, 2019, Respondent counsel, Sharon Stiller, communicated an agreed to Stipulation between the parties as to who are the named party/Respondents to this arbitration. Claimant's counsel, Jeremiah Frei-Pearson and Andrew White, were copied on the email. The below Stipulation was confirmed by Jeremiah Frei-Pearson by e-mail dated March 20, 2019.

The Stipulation is as follows:

Claimant is willing to stipulate that she will withdraw, without prejudice, her claims against all Respondents except for Parts Authority, Inc. and Parts Authority, LLC, provided that Respondents will stipulate to the following:

- The remaining Respondents - Parts Authority, Inc. and Parts Authority, LLC, - have adequate resources to fully satisfy a judgement against them in this arbitration.
- Respondents will not argue that any of the remaining Respondents as more proper Respondents than Parts Authority, Inc. and Parts Authority, LLC.
- Respondents have not withdrawn any discovery relevant to the Claimant's claims that otherwise would have been produced absent dismissal, and should further discovery be deemed necessary by the Arbitrator, Respondents will not withhold any future discovery on that basis.

Accordingly the caption reflects the Respondents to this Arbitration pursuant to this Stipulation.

The parties simultaneously filed post hearing briefs on February 19, 2019. The hearing was closed on February 19, 2019 and the parties were advised that the arbitrator would render an Award on or before March 21, 2019. By Order dated March 19, 2019, the Arbitrator gave Notice to the parties to reopen the hearings and invited the Claimant to make an Application for attorneys' fees, costs and interest. Claimant was given until March 29, 2019 to file her Application and Respondents filed their objection on April 5, 2019 with an Award scheduled on or before April 12, 2019. The parties subsequently granted an extension to April 17, 2019 for the arbitrator to render an Award. On April 10, 2019, Claimant's counsel advised that, in reviewing Respondents' objection to the application for attorneys' fees and costs he noticed a document was missing in his March 29, 2019 submission. By leave of the Arbitrator, the Exhibit was provided to the Arbitrator on April 11, 2019 and Respondents provided additional objections on April 18, 2019.

I, the undersigned Arbitrator, was duly sworn, read all counsels' submissions including pre and post hearing briefs and Joint Stipulation of Facts, heard all witnesses presented at the arbitration hearing, considered all the evidence and documents, the closing arguments of counsel, and the additional arbitrator requested Application for attorney's fees and Opposition including associated cases. The Arbitrator hereby finds, concludes and issues this **FINAL AWARD**, as follows

## FACTS

Claimant provided services as a delivery driver. She performed these services under an Owner Operator agreement between herself and Diligent Delivery Systems ("Diligent") from

2

May 11, 2015 through October 22, 2015. During that time she performed delivery driver services solely for and at the facilities of Parts Authority located at 200 Hembree Park Drive in Roswell, Georgia ("herein after called Roswell").

Diligent provides logistical services to customers such as Respondents and, after evaluating the need, refers engagement opportunities to owner operators such as Claimant.

Claimant is proceeding in arbitration to recover wages and other damages under the Fair Labor Standards Act ("herein after called FSLA") as an owner operator who accepted engagements from a Diligent customer, Parts Authority.

## CLAIMANT'S CLAIMS AND RESPONDENTS' RESPONSE

Claimant was referred to Diligent by her brother in law, Renan Oliveri, who told her that Parts Authority was hiring (See transcript day 1 page 30 line 14) and, in order to secure the position, she needed to meet with Fred Rosenau. Fred Rosenau from Diligent confirmed that Claimant was referred to him by Renan Oliveri (See transcript day 2 page 329 line 14-15). This was not her first engagement as an independent contractor/owner operator. Claimant testified that the Respondents' warehouse was closer to her children's school so the new job was logistically better for her (See transcript day 1 page 115 lines 21-25).

Claimant asserts that Respondents treated her as an employee instead of an independent contractor. The test (FSLA Sec 3, 29 U.S.C.A. Sec 203 ®(1)) put forth for why Claimant should be considered an employee are:
- The degree of control by employer over employee
- The worker's opportunity for profit/loss and their investment in the business
- The degree of skill and independent initiative require
- The permanence or duration of the working relationship
- The extent to which work is an integral part of the employer's business

### Control by employer over employee

Claimant testified about the high degree of control exerted over her by Respondents' employees, Tammy Turner, who was identified as the Parts Authority warehouse manager (see transcript day 1 page 35 line 14), and Monica Carter, who she described as a Parts Authority dispatcher (see transcript day 1 page 61 line 9), to support the first assertion. She testified about numerous instances where Ms. Turner instructed her: about her work hours; criticized her if she was late to work; required her to take late deliveries; specified the route she was required to take to make a delivery (See transcript day 1 pages 47 lines 17-25); and via text message that Monica Carter, reprimanded her for leaving a shift early (See joint exhibit 15 and transcript day 1 page154 line 6-13). When Claimant applied for the position, she testified that her cousin, Renan, told her that Parts Authority was hiring (See transcript day 1 page 31 lines 4-5).

To rebut Claimant's testimony Respondents offered testimony by Glenn Parrish, Assistant General Manager of Parts Authority (See transcript day 2 pages 273-303), and Fred Rosenau, Operations Manager for Diligent (See transcript day 2 pages 304-331). However, Mr. Parrish never met Claimant. He testified to his understanding of Parts Authority procedures but did not have any personal knowledge of the interaction between Claimant with either Ms. Turner or Ms. Carter (see transcript day 2 page 295 lines 20-25 and page 296 lines 1-3). Mr. Parrish spoke to Ms. Turner and Ms. Carter but none of the drivers despite the fact that he described his

responsibilities as supervising the drivers (see transcript day 2 page 301 lines 17-25 and page 302 lines 1-16). Mr. Rosenau remembered meeting with Claimant, and again testified to the general on boarding process for owner operators at Diligent and the general operating procedures for Diligent owner operators but he could not remember any direct interaction with Claimant especially relating to her interaction with Ms. Turner ( See transcript day 2 page 330 lines 3-6).

Respondents offered *Layton v DHL Express (USA) Inc.* 646 F. 3d 1172 (11th Cir. 2012) as illustrative of a close relationship between Sky Land drivers and DHL similar to that of Diligent drivers and Respondents. The court in *Layton* determined that despite the close working relationship between the Sky Land drivers and DHL that the drivers were not employees of DHL for FSLA purposes. This arbitrator believes the facts in *Layton* were different than in the present case.

Respondents also offered *Bonet v. Now Courier Inc.,* 203 F.Supp.3rd 1195, 1202 (S.D. Fla. 2016) as an even closer analogy to the situation in this case. However, in that case, the independent contractor failed to prove many of the tests under the FSLA in addition to not cooperating with providing documentation and the case was decided before trial.

On the issue of control of employer over employee, Claimant's testimony was credible despite inconsistencies with deposition testimony. The number of direct references she made to control by a Parts Authority employee was substantial. Respondent did not offer a witness with first-hand knowledge of the interactions between Claimant and Respondents' on site employees, Tammie Turner and Monica Carter. Claimant was credible in her believing that she was employed by Parts Authority.

There was a substantial amount of testimony around permission to take breaks, whether breaks were contemplated in the Owner Operator Agreement, and taking away of breaks. The need for breaks was important to Claimant since she used the time to address issues with her children. Claimant's children and her responsibility for them was one of the reasons to work at Respondents' Roswell facility. Because of this importance, her recollection regarding her ability to take or not take breaks was clear.

On a corporate level both Diligent and Parts Authority made efforts to distinguish the two companies. Respondents elicited testimony from Claimant that she wore a Diligent tee shirt when working while other drivers work Parts Authority shirts (See transcript day 1 page 127 lines 6-14). But this client was unsophisticated, attended school up to grade 11, (See transcript day 1 page 29 line 20) and conveyed that she believed that she was working for Parts Authority and that she considered Tammy Turner her direct supervisor.

### Worker's opportunity for profit/loss and their investment in the business

Respondents submitted evidence to support its contention that Claimant had her own business and could employ others to work instead of her, if needed. The evidence included the Diligent FAQ that Claimant signed (Joint Exhibit 7, p 29 section 7 ) an her initial meeting Fred Rosenau. Mr. Rosenau testified that owner operators could do as they please but also referred to owner operators who had people under their supervision as "master contractors" (see day 2 page 328 lines 11-16). Mr. Parrish testified that Parts Authority drivers were not permitted to have someone replace them if they were not available, was not aware of Diligent drivers who had someone work instead of him/herself, and wasn't aware of any conversation between Ms. Turner and the Claimant on the topic (see transcript day 2 page 302 lines 17-25 and page 303 lines 1-6).

4

Although Mr. Rosenau described his meeting with Claimant as one where they negotiated the contract (See transcript day 2 pages 306 and 323) it was more accurately described as a meeting to present and sign documents. Claimant was told what salary to insert in the owner operator agreement (See transcript day 1 page 33 lines 15-25). Claimant did not have an opportunity to negotiate her pay or increase profits except to the extent she worked longer hours nor did she have the opportunity to invest in the business.

The testimony and documentation elicited demonstrated that there was no opportunity for Claimant to impact her take home pay except to work more hours.

### The degree or skill or independent initiative required

Based on the testimony, no special skill, other than having a driver's license and a vehicle to deliver parts, was required to perform her position. In fact, when Claimant showed the initiative by changing the route if delayed by traffic, she was criticized by Respondents' on site employees (See transcript day 1 page 108 lines 20-21). Claimant also was instructed to refer all customer questions to Respondents' on site employees again limiting her knowledge about the business (See transcript day 1 page 50 lines 17-25 and page 51 lines 1-3).

### The permanence and duration of the working relationship

Mr. Rosenau testified that some of the Diligent drivers were in service 9 to 15 years. (see transcript day 2 page 328 lines 9-10). Because Respondents' warehouse was convenient to her children's school, she could also foreseeably have continued her service for a longer period of time had the circumstances been different.

### The extent to which work is an integral part of the employer's business

Respondents used drivers to deliver parts required by its customers. Contracting with drivers was integral to performing the service performed by Respondents (See transcript day 2 page 278). There was a mix of employee plus contract drivers that were used. The fact that Ms. Lucio was one of many drivers doesn't diminish the fact that Respondents used drivers to accomplish their business. The number of drivers whether directly or indirectly employed depended on seasonal requirements.

### Conclusion

The employer-employee relationship under the FLSA is tested by economic reality rather than technical concepts. Despite signing a Diligent "Owner Operator Agreement" there was sufficient evidence provided to support an employee/employer relationship with Respondents for the purposes of FSLA. It was clear to this arbitrator from the testimony that Claimant believed that she was employed by Respondents. Her testimony cannot be disregarded and was more credible despite Respondents' counsel's attempts to discredit her during cross examination.

This arbitrator also does not believe Respondents acted in bad faith. In making this statement, the arbitrator is only reflecting the circumstances of this case. On a corporate level, there were practices and procedures in place to distinguish Diligent and its owner operator drivers from Respondents and its employee drivers. However, without the testimony of on-site

employees, Claimant's testimony could not be adequately rebutted. Although Glenn Parrish testified his responsibilities covered the Roselle and other Parts Authority facilities, his testimony did not reflect knowledge about the actual day to day interactions between Claimant and Tammy Turner except a description of the general practices.

## DAMAGES

Claimant provided testimony at the hearing from Michael Earner (See transcript day 1 pages 163-215) who presented calculations of damages for Claimant based on the documents provided by Respondents making assumptions that did not take into account that Claimant may have made several deliveries on one route and other missing data. The calculations were revised in Claimant's Post Hearing brief. In their Post Hearing brief, Respondents offer an alternative damages calculation based on Claimant's pay records and tax returns (See page 9 and 10 of Respondents' Post Hearing brief).

It is up to the employer to maintain adequate records of the employees compensable activities. The employee is entitled to recover based on good faith, reasonable and realistic estimates. This arbitrator finds that the Claimant made a best case calculation as detailed in its Post Hearing brief and therefore Awards Claimant $5,865.54 in compensatory damages.

The FLSA provides that a successful employee is usually entitled to double the amount of unpaid back wages, called "liquidated damages" in lieu of interest. An employer can avoid paying liquidated damages if it shows that it acted in good faith and based on reasonable grounds, although discretion can still be exercised even if employer's actions were in good faith and reasonable.

Liquidated damages are awarded in the amount of $5,865.54. The demand for interest is DENIED

Total Damages Awarded is $11,731,08.

## ATTORNEYS' FEES, COSTS AND INTEREST

Claimants required to arbitrate statutory claims retain all substantive statutory rights in an arbitral forum including damages allowed. (See Gilmer v Interstate/Johnson Lane Corp. 500 U.S. 20, 1991). By Order dated March 19, 2019, the Arbitrator reopened the hearing in accordance with Section 34 of the AAA Employment Arbitration Rules asking Claimant to provide specificity regarding her claim for attorneys' fees and interest. Respondents were also given an opportunity to respond to the Application. Claimant's demand including pre and post hearing briefs in this matter included a claim for attorneys' fees, costs, and interest but no showing of the scope of the demand necessitating the invitation for an Application. This arbitrator desired to provide the parties with a full and final decision to include all aspects of the claim.

The decision on the award of interest was disposed above.

Both Claimant and Respondents were represented by highly competent, sophisticated counsel who vigorously represented their clients. The questions considered by the arbitrator in determining whether to Award attorneys' fees included the legal basis for the Award and the reasonableness of the fees requested.

Claimant's counsel's Application for attorneys' fees requests $275,000 in attorneys' fees plus $11,036.15 in out of pocket costs. The hourly rate used for the calculation of the fees was

discounted and approved by the federal courts on previous FSLA cases. The fees covered work for seven (7) lawyers.

A fee award in favor of a prevailing FLSA claimant is "mandatory." *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 86 (2d Cir. 1983); *Pimental v. Memories Pub Inc.,* 2018 U.S. Dist. LEXIS 27923, *6-7 (E.D.N.Y. Feb. 20, 2018).

This arbitrator recognizes that the Claimant consented to join a pending class action in the Eastern District of New York entitled Johnson v. Parts Authority, Inc. Case No. 1:16-cv-6852-DLI-RML (EDNY) (ECF Doc No 3) and subsequently was compelled to arbitrate her claim individually. The purpose of fee awards in wage and hour cases is to encourage attorneys to represent clients with small wage claims and there is no requirement of proportionality. That said, the amount of attorneys' fees should be reasonable.

Respondents argues that the attorneys' fees requested are excessive, lack specificity, and seek to recover attorney's fees for another case. Respondents suggest that the attorney's fees sought should be reduced substantially and that the hourly rate used be the one applicable for FSLA cases tried in Georgia where Claimant resides even though the place of hearing was Lake Success, New York.

This arbitrator believes there is a middle ground that strikes a balance. I reviewed the line items provided by Claimant's counsel, Jeremiah Frei-Pearson, and eliminated items that seemed to reflect work on other cases or involved conferring between counsel as well as line items that seemed to be for administrative work. Line items regarding discovery were not cut as much as Respondents suggested because of my personal experience reviewing discovery charts and sitting through a discovery hearing in this case. The hourly rate should be the rate in New York because the hearings were held in New York and the Eastern District of New York where the initial class action was filed and the matter was ordered to individual arbitration is also in New York.

Accordingly, the Jeremiah Frei-Pearson attorneys' fees line for himself and his associates was reduced from $248,008.50 to $112,580. The request for costs in the amount of $8,927.98 was reduced to $5,775.48. This arbitrator agreed that the charges for Westlaw, Lawline, laser pointer, thumb drive and Elite process server should be eliminated. Fees for Eli Karsh were eliminated. However, since this arbitrator is basing her decision on the revised calculations of Michael Earner, that charge should be included in costs.

I reviewed Mark Potashnick's Exhibit A. Using a standard of reasonableness, the appearance of three attorneys at an arbitration hearing with a demand of approximately $6,000 seems unreasonable. Accordingly, his request for attorneys' fees and costs are not granted.

## SUMMARY OF AWARD

FOR THE REASONS STATED ABOVE, THIS ARBITRATOR AWARDS AS FOLLOWS:

1. Respondent shall pay to Claimant within 30 days of this Award, the sum of $5,865.54 in unpaid required wages, plus an additional $5,865.64 in liquidated damages, totaling $11,731.08.
2. Attorneys' fees are awarded as stated above in the aggregate amount of $112,580.
3. Costs are awarded in the amount of $5,775.48.

7

4. The administrative fees of the AAA totaling $2,950.00 are to be borne $2,950.00 by Parts Authority, LLC and parts Authority, Inc. The compensation of the arbitrator totaling $16,150.00 are to be borne as incurred. Therefore, Parts Authority, LLC and Parts Authority, Inc. has to pay Susana Lucio an amount of $300.00. This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are, hereby DENIED.

April 25, 2019                                           _____
                                                         Deborah Masucci

State of New York   )
                    )  SS:
County of Kings     )

I, DEBORAH MASUCCI, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

April 25, 2019                                           _____
Date                                                     Arbitrator

State of New York   )
                    )  SS:
County of Kings     )

On this 25th day of April, 2019, before me personally came and appeared Deborah Masucci, to me known and known to me to be the individual described in and who executed the foregoing instrument and he/she acknowledged to me that he/she executed the same.

_____
Notary Public

> Hoa T Khuu
> Notary Public, State of New York
> Qualified in Queens County
> Lic. #01KH6358112
> Commission Expires May 01, 2021

8