# **EXHIBIT B**

AMERICAN ARBITRATION ASSOCIATION

| |
|---|
| SUSANA LUCIO,<br><br>　　　　　　　　　Claimant,<br><br>v.<br><br>PARTS AUTHORITY, LLC; PARTS AUTHORITY, INC.; PARTS AUTHORITY LAUREL AVENUE LLC, PARTS AUTHORITY PARTNERS FRANKLIN AVE LLC, PARTS AUTHORITY SOUTHERN LLC, PARTS AUTHOIRTY-WAW LLC, PA AUSTIN LLC, PARTS AUTHORITY GEORGIA LLC, and YARON ROSENTHAL,<br><br>　　　　　　　　　Respondents. |

## STATEMENT OF CLAIM

Claimant Susana Lucio ("Claimant" or "Ms. Lucio") by her undersigned attorneys, hereby makes the following allegations against Respondents Parts Authority, LLC, Parts Authority Inc., Parts Authority Laurel Avenue LLC, Parts Authority Partners Franklin Ave LLC, Parts Authority Southern LLC, Parts Authority-WAW LLC, PA Austin LLC, Parts Authority Georgia LLC, and Yaron Rosenthal (collectively "Parts Authority" or "Respondents"), with personal knowledge as to her own actions, and upon information and belief as to those of others:

## NATURE OF THE ACTION

1.　Respondents together own and operate a chain of approximately 81 automobile parts sales and distribution stores in the states of Georgia, Arizona, California, Maryland, New Jersey, New York, and Ohio and in the territory of Washington DC.

2.　Each of Respondents' stores employs auto parts delivery drivers, who Respondents have misclassified as "independent contractors."

3. Respondents failed to pay overtime wages to Claimant in violation of the Fair Labor Standards Act ("FLSA").

4. Respondents failed to reimburse Claimant for the cost of driving her own vehicle to deliver Respondents' auto parts to Respondents' customers, which caused her net wages to fall below the federal minimum wage (nominal wage rate – unreimbursed vehicle expenses = subminimum wage).

5. Claimant worked as a delivery driver for Respondents in Georgia from approximately May 2015 through approximately October 2015 and seeks to vindicate her rights against Respondents for their failure to pay her the wages she is due under the FLSA.

6. Accordingly, Claimant asserts Counts I and II against Respondents under the FLSA.[1]

## PARTIES

7. Claimant Susana Lucio is a resident of Fulton County, Georgia. From approximately May 2015 to approximately October 2015, Claimant was employed by Respondents as a delivery driver based at their warehouse located in Roswell, Georgia.

---

[1] Ms. Lucio initially opted into a class and collective action initiated by Mr. Maurice Johnson, individually and on behalf of others similarly situated, in federal court. *See Johnson v. Parts Authority, LLC et al.*, No. 16-6852, ECF Doc. 31 (E.D.N.Y. Mar. 6, 2017). However, Parts Authority produced an arbitration agreement signed by Mr. Johnson and moved to stay the action and compel individual arbitration of Mr. Johnson's claims. *See Johnson v. Parts Authority, LLC et al.*, ECF Docs. 25 & 26. Parts Authority also produced an arbitration agreement signed by Ms. Lucio. Ms. Lucio believes that the arbitration agreement is inapplicable to her employment relationship with Parts Authority. Mr. Lucio strongly believes that the Arbitration Agreement does not prevent her from bringing these claims as a class or collective action in court or in arbitration, and she expressly reserves her right to join in or initiate a class or collective proceeding should a relevant authority rule that class or collective arbitration or litigation is permissible.

8. Respondent Parts Authority, LLC is a Delaware limited liability company maintaining its principal place of business at 211-10 Hillside Avenue, Queens Village, New York, 11427, which is located in Queens County, New York.

9. Respondent Parts Authority, Inc. is a New York corporation maintaining its principal place of business at 211-10 Hillside Avenue, Queens Village, New York, 11427, which is located in Queens County, New York.

10. Respondents Parts Authority Laurel Avenue LLC, Parts Authority Partners Franklin Ave LLC, Parts Authority Southern LLC, Parts Authority-WAW LLC, and PA Austin LLC are New York limited liability companies maintaining their principal place of business at 211-10 Hillside Avenue, Queens Village, New York, 11427, which is located in Queens County, New York.

11. Respondent Parts Authority Georgia LLC is a Georgia limited liability company maintaining its principal place of business at 211-10 Hillside Avenue, Queens Village, New York, 11427, which is located in Queens County, New York.

12. Respondent Yaron Rosenthal is an individual who resides in Queens Village in Queens County, New York. Throughout the relevant period, Respondent Rosenthal exercised operational control over all Respondents; oversaw and / or implemented the wage and hour policies and practices implicated in this action, was ultimately responsible for the delivery drivers' wages and wage statements and, as a result, is personally liable for the actions alleged herein.

13. Claimant expressly reserves her right to add additional parties pending further discovery in this action.

14. Respondents comprise a "single employer" or "single integrated enterprise" as they share interrelated operations, centralized control of labor relations, common management, and common ownership or financial control. Based on knowledge and information, Respondent Rosenthal ultimately owns a substantial interest in each of the Respondent entities; he serves as the Chief Executive Officer ("CEO") and principal of all Respondent entities; and he maintains ultimate control of all Respondents' business operations. The approximately 81 Parts Authority stores are advertised as a single integrated enterprise on Respondents' website at www.partsauthority.com.

15. Alternatively and/or cumulatively, Respondents constitute "joint employers" with respect to Claimant as they shared authority to hire and fire her, determine her rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll and insurance decisions, and supervise Claimant.

16. Alternatively and/or cumulatively, because the work performed by Claimant and the other delivery drivers simultaneously benefited all Respondents and/or directly or indirectly furthered their joint interests, and because Respondents are not completely disassociated with respect to the employment of the delivery drivers and may be deemed to share control of the delivery drivers, either directly or indirectly, by reason of the fact that each Respondent either controls, is controlled by, or is under common control with the other Respondents, Respondents are collectively the "joint employers" of the delivery drivers under the FLSA's broad definition of "employer." 29 U.S.C. § 203(d); 29 C.F.R. § 791.2(b).

## FACTUAL BACKGROUND

*Respondents' Business*

17. Respondents together own and operate a chain of approximately 81 vehicle parts sales and distribution stores in the States of Georgia, Arizona, California, Maryland, New Jersey, New York, and Ohio and in Washington DC.

18. The primary function of these stores is to sell automotive parts to Respondents' customers, whether customers purchase those parts in Respondents' stores or have the parts delivered.

19. Each of Respondents' stores employs delivery drivers, such as Claimant.

20. Claimant's primary job duty was delivering automotive parts to Respondents' customers using her personal automobile.

*Respondents' Treatment of Delivery Drivers*

21. Respondents treated Claimant as an employee, rather than an independent contractor:

    a. Claimant was economically dependent on Respondents;

    b. Respondents scheduled Claimant to work full time or longer hours, thereby precluding her from earning substantial income from other sources or engaging in substantial independent business activities;

    c. Claimant's work assigned by Respondents constituted an integral part of Respondents' automotive parts sales and delivery business and/or Respondents assigned Claimant to perform Respondents' core business activity of delivering automotive parts to Respondents' customers;

    d. Claimant did not exercise managerial skill which affected her opportunity for profit or loss;

    e. Claimant did not hold meaningful opportunity for profit or loss as part of her duties performed for Respondents;

    f. Respondents compensated Claimant through daily or hourly wages such that she earned the same amount during her employment period, regardless of job

performance and such that she had no opportunity to increase earnings based on entrepreneurial or business skills;

g. Claimant did not, and could not, hire other helpers or subordinates to assist her with delivering Respondents' automotive parts to Respondents' customers;

h. Claimant did not, and was not asked to, solicit additional work for herself from Respondents' customers or others;

i. Claimant did not advertise her services as an automotive parts delivery driver;

j. Claimant did not purchase or maintain inventories of automotive parts for sale or distribution to customers;

k. Claimant did not rent, lease, or purchase retail, warehousing, or other commercial space to maintain inventories of automotive parts to deliver to customers;

l. Claimant did not schedule deliveries or manage time tables for delivery of automotive parts to Respondents' customers;

m. Claimant invested a relatively small amount in equipment and supplies needed to perform her duties for Respondents compared to the value of Respondents' investments in their own business, inventory, premises, operating systems, advertising, name recognition, goodwill, labor, overhead, etc.;

n. Claimant's work did not encompass any special skill, and only required ordinary ability to drive a vehicle and follow Respondents' instructions;

o. The delivery drivers' employments have typically lasted relatively long-term, such as Claimant's multiple months of service for Respondents; and

p. Respondents maintained an ability to exercise meaningful control, and did exercise meaningful control, over Claimant, including, but not limited to:

   i. Respondents assigned Claimant's work schedules;

   ii. Respondents assigned the beginning and ending times of the Claimant's shifts;

   iii. Respondents required Claimant to report to Respondents' facilities at the beginning of her scheduled shifts to obtain automotive parts for delivery and receive delivery assignments;

   iv. Respondents assigned/dispatched all routes to Claimant;

   v. Respondents assigned/dispatched all deliveries to Claimant;

   vi. Respondents instructed Claimant how to load automotive parts into her vehicle;

    vii.    Respondents monitored and supervised Claimant's work;

    viii.    Respondents warned Claimant of discipline based on her performance and/or conduct;

    ix.    Respondents disciplined Claimant based on performance and/or conduct;

    x.    Respondents instructed Claimant not to talk on the telephone while in their facilities;

    xi.    Respondents monitored Claimant through an automotive parts tracking application;

    xii.    Respondents required Claimant to call dispatchers to report her arrival at customers; and

    xiii.    Respondents required Claimant to obtain signatures of Respondents' customers to verify deliveries of automotive parts.

22.    Furthermore, Respondents exercised control over Claimant's ability to take breaks by forbidding them. Indeed, Respondents' manager at the warehouse refused to approve breaks for Claimant, even though Claimant needed to use a break in order to pick her 14 year old son up from school and drop him off at home. Respondent's manager would, however, require Claimant to run the manager's personal errands (e.g., picking up lunch) on company time. When Claimant escalated her request for breaks, she was told that the manager at the warehouse was in charge and that Claimant had to abide by that manager's decisions.

23.    Eventually, Respondents' callous treatment was more than Claimant could bear. In October 2015, Claimant's daughter suffered from an asthma attack and required a visit to the emergency room. Because Claimant did not leave the hospital until 4 a.m. and because her daughter still required care, she requested the next day off. Claimant was told that she could not have the day off and that she had to choose between her family or her job with Respondents. Claimant chose her family and ceased working for Respondents.

***Respondents' Payment of Delivery Drivers***

24.    Respondents typically required Claimant to work in excess of 40 hours per week.

25. For example, for some time during her employment, Respondents required Claimant to work 57 or more hours per week. Claimant's assigned shift would last from 8:00 a.m. to 6:00 p.m., or longer hours, on Mondays through Fridays and from 8:00 a.m. to 3:00 p.m., or longer hours, on Saturdays, typically without breaks. Moreover, Respondents would sometimes assign Claimant a delivery run at or around 5:45 p.m., thereby requiring her to work until as late as 6:45p.m.

26. Respondents paid Claimant twice a month (on the 5th and the 20th). The exact amount that Respondents paid Claimant in a given pay period would vary, but her checks were usually around $900 per pay period.

27. Thus, Respondents paid Claimant an average of about $1,800 per month for approximately 247 hours of work (57 hours/week * 4.33 weeks/month), which equates to an average of approximately $7.29 per hour ($1,800/247 hours = $7.29 per hour) before considering unreimbursed vehicle costs, which is only slightly above the 2015 federal hourly minimum wage of $7.25.

28. Respondents failed and refused to pay Claimant overtime wages equal to at least one and one-half times her regular wage rate for work performed in excess of 40 hours per week.

29. When adjusted for 17 hours per week for which Claimant was owed overtime at time and a half (at least 57 hour/week worked - federal 40 hour/week non-overtime limit = at least 17 hours/week overtime), Respondents paid Claimant an average of approximately $6.35 per hour ($1,800 per month / 4.33 weeks per month / (40 hours + (1.5 * 17 hours)) = $6.35/hour), which is less than the 2015 federal hourly minimum wage of $7.25.

30. Accordingly, Respondents failed and refused to pay Claimant at least the federal minimum wage rate.

8

*Under-Reimbursement of Delivery Drivers*

31. Respondents have required Claimant to supply an operable, legally-compliant, and insured vehicle to deliver Respondents' automotive parts to Respondents' customers.

32. Claimant incurred costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering automotive parts for the primary benefit of Respondents.

33. Respondents failed and refused to reimburse Claimant for her vehicle costs incurred in performing her job for Respondents' benefit.

34. Respondents' conduct is tantamount to a highly unreasonable reimbursement of Claimant's vehicle expenses incurred in performing her job.

35. During Claimant's employment, the applicable IRS standard business mileage reimbursement rate was $0.575 per mile.

36. This publicly-available vehicle reimbursement rate represents a reasonable approximation of the average cost of operating a vehicle for use in delivering Respondents' automotive parts to their customers.

37. The driving conditions associated with a delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures, caused Claimant to experience lower gas mileage, higher maintenance costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver.

38. Respondents' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Respondents such that the wages Respondents paid to Claimant were not paid free and clear of all outstanding obligations to Respondents.

39. Respondents failed to reasonably approximate the amount of Claimant's automobile expenses to such an extent that her net wages were diminished beneath the federal minimum wage.

40. As noted above, when adjusted for overtime, Respondents paid Claimant an average of approximately $6.35 or less per hour.

41. The federal minimum wage rate has been $7.25 per hour since July 24, 2009.

42. Claimant averaged at least approximately 150 or more delivery miles per 10 hour shift for Respondents. Indeed, Claimant was required to drive 150 or more miles per 10 hour shift, and Respondents' manager at the worksite would check Claimant's mileage to make sure that she had driven at least 150 miles during the shift.

43. The IRS standard business mileage reimbursement rate of $.575 per mile, which was in effect during Claimant's employment, reasonably approximates the automobile expenses that Claimant incurred in delivering automotive parts in 2015. Using that IRS rate as a reasonable approximation of Claimant's automobile expenses, every mile driven on the job decreased her net wages by approximately $.575 ($.575 - $0.00 reimbursement).

44. Claimant "kicked back" to Respondents approximately an average of $86.25 or more per 10 hour shift (150 average miles per full shift x $.575 under-reimbursement per mile), which equates to approximately $8.62 kicked-back to Respondents per hour per shift of 10 hours.

45. Because Claimant was paid $6.35 per hour or less before deducting unreimbursed job expenses, the under-reimbursed vehicle expenses caused her to incur net wages of approximately negative $2.27 per hour (*e.g.*, $6.35 or less hourly wage nominally paid - $8.62 per hour kickback = -$2.27 or less per hour subminimum net wage). Such losses obviously bring Respondents' hourly wage paid to Claimant below the federal minimum.

*Notice and Willfulness*

46. Respondents' failures -- including, but not necessarily limited to, their failures to pay overtime wages and lack of vehicle reimbursements -- have been a frequent complaint of at least some of Respondents' delivery drivers, including Claimant, yet Respondents continued to fail and refuse to pay Claimant overtime wages or vehicle cost reimbursements.

47. Respondents have been on notice of the overtime violations alleged as they have been repeatedly sued for the same, or very similar, violations; but Respondents have nevertheless failed and refused to correct such violations.

48. Alternatively or cumulatively, Respondents have been on notice of the above-alleged failures based on the public proliferation of similar claims lodged against delivery companies since 2009; but Respondents have failed and refused to correct such violations.

49. Alternatively or cumulatively, Respondents were on notice of the above-alleged failures based on the U.S. Department of Labor's interpretive guidance regarding misclassification of independent contractors issued July 15, 2015, which was well publicized. *See* U.S. DOL, Administrator's Interpretation No. 2015-1 (July 15, 2015).

50. Alternatively or cumulatively, Respondents maintained the information needed to detect their own violations, but Respondents have failed and refused to correct such violations.

51. Respondents have acted without a good faith basis to believe that their underpayments of wages and other violations alleged herein have been in compliance with the law in that Respondents knowingly, deliberately, and/or voluntarily disregarded their obligations to pay Claimant overtime and vehicle reimbursements.

*Net Impact*

52. The net impact of Respondents' policies and practices, instituted and approved by company managers, is that Respondents have acted without a good faith basis to believe that

11

their underpayment of wages were in compliance with the law, in that Respondents (a) failed to pay Claimant overtime in violation of federal law and (b) failed to reimburse Claimant for automobile expenses to such an extent that Respondents further reduced her net wages below the federal minimum wage.

## CLAIMS

### Count I: Violation of the FLSA by Failing to Pay Overtime Wages

53. Claimant reasserts and re-alleges the allegations set forth above.

54. At all times material herein, Claimant has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq.*

55. The FLSA regulates, among other things, the payment of overtime wages to employees who are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

56. Respondents are subject to the overtime pay requirements of the FLSA because they constitute an enterprise engaged in interstate commerce and Claimant was engaged in interstate commerce.

57. During all times relevant to this action, Respondents were Claimant's "employers" within the meaning of the FLSA. 29 U.S.C. § 203(d).

58. During all times relevant to this action Claimant was Respondents' "employee" within the meaning of the FLSA. 29 U.S.C. § 203(e).

59. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. Despite Respondents' misclassification of Claimant, none of the FLSA's exemptions apply to Claimant. *Id.*

60. Pursuant to the FLSA, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

61. Respondents violated the FLSA by failing to pay overtime wages as required by the FLSA. 29 U.S.C. § 207(a).

62. Claimant is entitled to damages equal to the mandated overtime premium pay within the 3 years preceding the date Claimant asserted her claim by opting-in to the lawsuit filed by Maurice Johnson in *Johnson v. Parts Authority et al.* (E.D.N.Y.), plus periods of equitable tolling, because Respondents acted willfully and knew, or showed reckless disregard for whether their conduct was prohibited by the FLSA, and dissuaded employees from asserting their legal rights by misinforming employees about those rights.

63. Respondents have not acted in good faith or with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, Claimant is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay permitted by 29 U.S.C. § 216(b). Alternatively, should the Arbitrator find that Respondents are not subject to an award of liquidated damages, Claimant is entitled to an award of prejudgment interest at the applicable legal rate.

64. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Respondents from Claimant. Accordingly, Respondents are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count I of this Complaint, Claimant demands judgment against Respondents and prays for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Arbitrator deems fair and equitable.

### Count II: Violation of the FLSA by Failing to Pay Minimum Wage After Deducting Unreimbursed Vehicle Expenses

65. Claimant reasserts and re-alleges the allegations set forth above.

66. At all relevant times herein, Claimant has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

67. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. Despite Respondents' misclassification of Claimant as an "independent contractor," none of the FLSA exemptions apply to Claimant.

68. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

69. Respondents are subject to the FLSA's minimum wage requirements because they are an enterprise engaged in interstate commerce, and their employees are engaged in commerce.

70. Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

71. Under Section 7 of the FLSA, codified at 29 U.S.C. § 207, employees have been entitled to be compensated at a rate of at least one and one-half times their "regular rate" of pay for all time worked in excess of 40 hours per workweek.

72. As alleged herein, Respondents have reimbursed their delivery drivers, including Claimant, less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

73. Respondents knew or should have known that their pay and reimbursement policies, practices, and methodology resulted in failure to compensate Claimant at the federal minimum wage and/or provide her required overtime compensation.

74. Respondents, pursuant to their policy and practice, violated the FLSA by failing and refusing to pay federal minimum wage and/or overtime compensation to Claimant.

75. Claimant is entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within 3 years from the date Claimant asserted her claim by opting-in to the lawsuit filed by Maurice Johnson in *Johnson v. Parts Authority et al.* (E.D.N.Y.), plus periods of equitable tolling, because Respondents acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

76. Respondents have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Claimant is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Arbitrator find Respondents did not act in good faith and with reasonable grounds in failing to pay minimum wage and / or overtime compensation, Claimant is entitled to an award of prejudgment interest at the applicable legal rate.

77. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Respondents from Claimant. Accordingly, Respondents are liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count II, Claimant demands judgment against Respondents and requests: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Arbitrator deems fair and equitable.

Dated: White Plains, New York
January 30, 2018

Respectfully Submitted,

**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

By: */s/Jeremiah Frei-Pearson*
Jeremiah Frei-Pearson
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com

**WEINHAUS & POTASHNICK**
Mark Potashnick, MO Bar # 41315
11500 Olive Boulevard, Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 997-9170
markp@wp-attorneys.com

**LIBERMAN, GOLDSTEIN & KARSH**
Eli Karsh, MO Bar # 43061
230 South Bemiston Avenue, Suite 1200
Clayton, Missouri 63105
Telephone: (314) 862-3333 ext. 13
Facsimile: (314) 863-0605
elikarsh@aol.com

*Attorneys for Claimant*